FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 14, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LEAH R.,<br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>　　　　　　Defendant. | No. 1:17-cv-03213-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 15, 21 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 21. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 15, and grants Defendant's Motion, ECF No. 21.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

§§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

ORDER - 4

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§
404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other
work, analysis concludes with a finding that the claimant is disabled and is
therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to
step five, the burden shifts to the Commissioner to establish that (1) the claimant is
capable of performing other work; and (2) such work "exists in significant
numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2);
*Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 18, 2011, Plaintiff protectively filed applications for Title II
disability insurance benefits and Title XVI supplemental security income, alleging
an onset date of September 13, 2011. Tr. 158-66. The applications were denied
initially, Tr. 107-10, and on reconsideration, Tr. 113-16. Plaintiff appeared at a
hearing before an administrative law judge (ALJ) on April 30, 2013. Tr. 33-68.

On May 17, 2013, the ALJ issued a decision finding that Plaintiff was not
disabled. Tr. 17-32. The Appeals Council denied review. Tr. 1-6. Plaintiff
sought relief in District Court, and the Court remanded the case for further

proceedings. Tr. 464-481. Plaintiff appeared at a second hearing on July 21, 2017. Tr. 427-52. On September 22, 2017, the ALJ denied Plaintiff's claim. Tr. 402-26.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 13, 2011, the alleged onset date. Tr. 408. At step two, the ALJ found Plaintiff had the following severe impairments: multilevel spinal disorders, carpal tunnel syndrome, and obesity. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 408-09. The ALJ then concluded that Plaintiff had the RFC to perform work with the following limitations:

> [Plaintiff] retains the residual functional capacity for work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; pushing or pulling similar amounts; no more than two hours of standing and/or walking in an eight-hour day; sitting for a total of six hours in an eight-hour workday; the option to stand for up to five minutes at the workstation every 30 minutes before returning to a seated position; no climbing of ladders, ropes, or scaffolds; no more than occasional ability to perform all other postural activity; no foot pedal operation; no more than frequent reaching, but no overhead reaching; no more than frequent handling and fingering; no exposure to hazards, such as dangerous moving machinery and unprotected heights; and no more than occasional exposure to environmental extremes such as dust, gas, fumes, heat, cold, or humidity.

Tr. 409.

At step four, the ALJ made no finding regarding past relevant work because all applicable grid rules would direct a finding of not disabled. Tr. 417. At step

ORDER - 7

five, the ALJ found that considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as charge account clerk, telephone quotation clerk, and addresser. Tr. 417-18. The ALJ concluded Plaintiff had not been under a disability as defined in the Social Security Act from September 13, 2011 through the date of the decision. Tr. 418. On January 12, 2016, the Appeals Council denied review, Tr. 487-91, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 404.981, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability income benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated at steps two and three whether Plaintiff had a medically determinable intellectual disorder;

2. Whether the ALJ properly weighed Plaintiff's symptom testimony; and

3. Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 15 at 1.

# DISCUSSION

## A. Intellectual Disorder

Plaintiff faults the ALJ for failing to find intellectual disorder as a severe impairment at step two and for failing to find Plaintiff met listing 12.05 for intellectual disorder at step three. ECF No. 15 at 5-9.

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1505, 416.920(c). When a claimant alleges a severe mental impairment, the ALJ must follow a two-step "special technique" at steps two and three. First, the ALJ must evaluate the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [he or she has] a medically determinable impairment." 20 C.F.R. §§ 404.1520a, 416.920a. Second, the "degree of functional limitation resulting from [the claimant's] impairments" in four broad areas of functioning: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. Functional limitation is measured as "none, mild, moderate, marked, and extreme." If limitation is found to be "none" or "mild," the impairment is generally considered to not be severe. If the impairment is severe, the ALJ proceeds to determine whether the impairment meets or is equivalent in severity to a listed mental disorder.

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Plaintiff asserts the ALJ should have found Plaintiff had the severe impairment of intellectual disorder at step two based on Dr. Dougherty's psychological evaluation. ECF No. 15 at 5-8. Dr. Dougherty examined Plaintiff on May 22, 2014 and assessed a series of personality traits and features. Tr. 922-36. Dr. Dougherty diagnosed Plaintiff with "rule out Cognitive disorder, NOS." Tr. 934. "A 'rule-out' diagnosis is by no means a diagnosis. In the medical context, a 'rule-out' diagnosis means there is evidence for a diagnosis *may* be met, but more information is needed in order to rule it out." *Carrasco v. Astrue*, No. ED CV 10-0043 JCG, 2011 WL 499346, at *4 (C.D. Cal. Feb. 8, 2011) (emphasis in original) (internal citations omitted). A "rule out" diagnosis, standing alone, is not sufficient to establish the existence of a severe impairment. *See, e.g., Crawford v. Colvin*, No. C13-1786-JCC, 2014 WL 2216115, at *5 (W.D. Wash. May 29, 2014); *Jackson v. Astrue*, No. ED CV 09-677-PJW, 2010 WL 1734912, at

ORDER - 10

*2 (C.D. Cal. Apr. 28, 2010); *Simpson v. Comm'r, Soc. Sec. Admin.*, No. Civ. 99-1816-JO, 2001 WL 213762, at *8 (D. Or. Feb. 8, 2001). The ALJ considered Dr. Dougherty's report and concluded that "these are not diagnoses and do not constitute medically determinable impairments." Tr. 408.

The ALJ's conclusion is supported by substantial evidence in the record. Plaintiff bears the burden of proof to establish that she has a severe impairment. *Tackett*, 180 F.3d at 1098. Although Plaintiff now asserts that she has the severe impairment of intellectual disorder, Plaintiff did not allege any mental impairment or associated functional limitation in her disability report, Tr. 186-93, her function report, Tr. 206-13, in her appeal of the initial determination, Tr. 214-22, or at either administrative hearing, Tr. 40-57, 432-43. The record does not indicate that Plaintiff sought any treatment or support services for intellectual disorder. No medical source diagnosed an intellectual disorder or opined that Plaintiff had any functional limitations associated with an intellectual disorder. The ALJ did not err in failing to identify intellectual disorder as a severe impairment.

Despite not identifying intellectual disorder as a severe impairment, Plaintiff asserts the ALJ should have found Plaintiff met the requirements of the listed impairment of intellectual disorder at Listing 12.05B. ECF No. 15 at 5-7. Listing 12.05B is met when the claimant can demonstrate:

> (1) A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence;

ORDER - 11

(2) Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; or adapt or manage oneself; and

(3) Evidence that the claimant's current intellectual and adaptive functioning and about the history of the claimant's disorder demonstrates or supports the conclusion that the disorder began prior to age 22.

20 C.F.R. § 404, Appendix 1 to Subpt. P.

Plaintiff asserts that her IQ composite score of 66 and poor academic performance satisfy the three requirements of 12.05B. ECF No. 15 at 6-7. However, substantial evidence supports the ALJ's finding of no listed impairments at step three. Tr. 408-09. Dr. Dougherty questioned the validity of Plaintiff's score, noting that they were inconsistent with her academic and work history, and estimated that Plaintiff's scores were impacted by anxiety during testing and that her actual intelligence was higher than measured. Tr. 930, 935. The personality traits Dr. Dougherty assessed and the evidence of Plaintiff's CPS involvement Plaintiff highlights do not establish deficits in adaptive functioning. Tr. 922-36. The academic records Plaintiff identifies document Plaintiff's grades, teacher comments, and standardized test performance, but do not document special education services, any assessment of developmental disability, or any attribution of Plaintiff's poor academic performance to intellectual disability. Tr. 257-318. Plaintiff was also able to successfully work several jobs both before and after age 22 without documented impact from any alleged intellectual impairment. Tr. 601.

ORDER - 12

This evidence does not sufficiently establish the requirements of Listing 12.05B. The ALJ did not err in failing to identify intellectual disorder as a severe impairment or in failing to find Plaintiff met listing 12.05B.

## B. Plaintiff's Symptom Testimony

Plaintiff faults the ALJ for failing to provide clear and convincing reasons to discredit her symptom testimony. ECF No. 15 at 16-20.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence. Tr. 410.

### 1. Lack of Supporting Medical Evidence

The ALJ found Plaintiff's symptom testimony was not supported by the medical evidence. Tr. 410-14. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c), 416.929(c). Minimal objective evidence is a factor which may be relied upon to discount a claimant's testimony, although it may not be the only factor. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ noted that Plaintiff testified that her back pain caused her to be bedridden for extended periods of time, caused a minimal ability to stand, and caused her to need to lie down frequently. Tr. 414. However, the ALJ found this testimony was inconsistent with Plaintiff's physical examination records, which

showed generally mild or unremarkable results.  Tr. 410-14; *see* Tr. 336 (February 23, 2011: reports of tenderness, normal range of motion, normal strength and sensation in bilateral upper extremities); Tr. 340 (September 8, 2011: normal strength and sensation in extremities, negative straight leg raise); Tr. 344 (September 26, 2011: normal range of motion, muscle strength, and stability in all extremities with no pain on inspection; normal strength and sensation of bilateral upper extremities; normal range of motion of neck); Tr. 353 (November 1, 2011: musculoskeletal examination revealed normal range of motion, muscle strength, and stability in all extremities with no pain on inspection); Tr. 333 (November 18, 2011: tenderness to palpation over right sacroiliac joint, negative straight leg test and Patrick test bilaterally, some discomfort with full back extension, tenderness to palpation over the central and mid to lower cervical spine, minimal decreased range of motion in neck); Tr. 364 (December 24, 2011: musculoskeletal examination showed normal range of motion, normal strength, no tenderness, normal back alignment, and decreased range of motion in back); Tr. 369 (March 21, 2012: physical examination unremarkable, normal gait, normal toe- and heel-walking, Plaintiff could squat and raise without difficulty); Tr. 865 (August 5, 2012: back examination included findings of normal inspection, normal range of motion, tenderness medial to the scapula on the left side trapezius area; upper extremities normal upon physical examination); Tr. 782 (June 21, 2013: tenderness

at C4/C5, no tenderness at thoracic or lumbar spine, normal straight leg raise, normal gait); Tr. 731-34 (July 10, 2014: palpation tenderness over midline lumbar spine, no restriction in lumbar range of motion, negative straight leg tests, hip range of motion normal. Dr. Hurtarte did not recommend opioid therapy due to mild nature of Plaintiff's spine pathology); Tr. 744, 747 (July 18, 2014: decreased range of motion in neck, negative straight leg tests, normal inspection of neck and back, no neck or back tenderness, range of motion in neck and back within normal limits); Tr. 730 (August 7, 2014: gait non-antalgic and full range of motion in cervical, thoracic, and lumbar flexion, extension, and rotation); Tr. 831-32 (June 14, 2015: negative straight leg test, full muscle strength, normal muscle tone, sensation intact, normal gait, Plaintiff was able to walk on tiptoes, heels, and tandem walk without difficulties); Tr. 908 (July 28, 2015: soft tissue tenderness in the lower central lumbar area and normal range of motion); Tr. 952 (August 6, 2015: tenderness to palpation at L4-5, normal sensation, motor strength, balance, and gait); Tr. 996-97 (January 24, 2017: moving all extremities well, easily gets on and off exam table, pain on palpation over midline lumbar spine, Plaintiff able to bend forward and touch toes, pain on palpation midline cervical spine. Dr. Plotts found no alarming symptoms by examination); Tr. 1004 (February 21, 2017: normal physical examination); Tr. 1015 (April 21, 2017: normal physical examination); Tr. 1018 (May 1, 2017: Plaintiff appeared well and in no distress,

but declined further physical examination because "It's just going to hurt, I don't see why that's necessary"); Tr. 1021 (July 3, 2017: negative straight leg raise, full muscle strength in upper and lower extremities, full range of motion, symmetrical gait). The ALJ reasonably concluded that this evidence was inconsistent with Plaintiff's allegations of severe back pain.

The ALJ also found that Plaintiff's symptom testimony was inconsistent with the objective imaging in the record. Tr. 410-14; *see* Tr. 333 (September 13, 2011 MRIs showed moderate C5-6 disk protrusion causing moderate central canal narrowing and touching the cervical cord and mild central disk protrusion at L5-S1 without any central canal or neuroforaminal narrowing); Tr. 346 (October 13, 2011: MRI normal); Tr. 785 (September 15, 2014 MRI of cervical spine showed right posterior disc bulge at C5-6 level appeared to have slightly decreased in size, very mild spinal canal narrowing, slight interval increase in size of the broad-based disc bulge at C6-7 level touching upon the anterior surface of the cervical spinal cord, mild neuroforaminal narrowing on the left and right which have not significantly changed since 2011 MRI, and no abnormal signal intensity within the cervical spinal cord); Tr. 787 (September 15, 2014 MRI of lumbar spine showed mild broad-based disc bulge at L4-5 level, mild-to-moderate right neuroforaminal narrowing at L4-5 slightly increased compared to 2011 MRI, disc material in close proximity to the exiting L4 nerve root, unchanged foraminal narrowing on the left,

ORDER - 18

small posterior disc bulge at the L5-S1 level, no significant canal stenosis, and no significant foraminal narrowing); Tr. 832 (interpreting Plaintiff's 2015 imaging as showing a very small disc herniation, no nerve impingement, minimal lumbar spinal degeneration, and some cervical spinal degeneration); Tr. 980 (December 30, 2016: x-rays of lumbar spine showed mild loss of disc height at L5-S1 and no acute findings). The ALJ reasonably concluded that this evidence was inconsistent with Plaintiff's symptom testimony

The ALJ further concluded that Plaintiff's symptom testimony regarding carpal tunnel syndrome was inconsistent with her examination notes and objective testing results. Tr. 414; *see* Tr. 780 (May 5, 2014: Plaintiff could move shoulder, elbow, and hand through full range of motion, had no deformities in the spine, shoulder, elbow, or hand, negative Tinel sign and Phalen sign, and good grip strength bilaterally); Tr. 797 (July 2, 2014: physical examination "completely normal"); Tr. 881-82 (April 27, 2015: physical examination normal except for mild tenderness to palpation at right olecranon bursa and dorsal aspect; nerve conduction studies document mild SAP delay and relative motor latency consistent with mild carpal tunnel syndrome). The ALJ also noted that Plaintiff's medical records do not document significant carpal tunnel symptoms following June 2015. Tr. 414. The ALJ reasonably concluded that this evidence was inconsistent with Plaintiff's symptom testimony.

Plaintiff asserts several errors in the ALJ's findings. First, Plaintiff claims that the ALJ violated the law of the case doctrine by considering the consistency of Plaintiff's symptom testimony with the medical evidence. ECF No. 15 at 16-17. "The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). However, the doctrine "should not be applied when the evidence on remand is substantially different." *Id.* Here, Plaintiff notes that this Court observed in its 2015 evaluation of the 2013 ALJ decision that "the objective evidence is mostly consistent with Plaintiff's symptom reporting." Tr. 478. At the time of the Court's 2015 opinion and the ALJ's 2013 decision, the record contained only 81 pages of medical evidence dating from 2008 to 2012. Tr. 320-401. The record before the ALJ in 2017, and presently before the Court, contains an additional 317 pages of medical evidence dating from 2011 to 2017. Tr. 709-1026. Indeed, most of the evidence discussed *supra* that the ALJ identified as inconsistent with Plaintiff's symptom testimony was not part of the record upon the Court's 2015 review. Accordingly, the evidence in this case on remand is substantially different from the record on this Court's initial review, thus, the law of the case doctrine does not apply.

Second, Plaintiff identifies medical evidence in the record that Plaintiff argues supports Plaintiff's symptom testimony. ECF No. 15 at 17; *see, e.g.,* Tr. 328 (March 2011: reduced range of motion); Tr. 376 (December 2011: straight leg test positive); Tr. 785 (September 2014 MRI of cervical spine showed right posterior disc bulge at C5-6 level appeared to have slightly decreased in size, very mild spinal canal narrowing, slight interval increase in size of the broad-based disc bulge at C6-7 level touching upon the anterior surface of the cervical spinal cord, mild neuroforaminal narrowing on the left and right which have not significantly changed since 2011 MRI, and no abnormal signal intensity within the cervical spinal cord); Tr. 884 (April 2015 mild positive electrodiagnostic test); Tr. 981 (December 2016: muscle spasm observed). It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the ALJ's interpretation of the record is reasonable, as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). The ALJ reasonably interpreted the medical evidence as a whole to be inconsistent with the level of impairment Plaintiff alleged, and this finding is supported by substantial evidence.

ORDER - 21

Finally, Plaintiff asserts the ALJ erred by failing to specifically identify what evidence the ALJ found to be inconsistent with Plaintiff's specific testimony. ECF No. 15 at 17-18. In evaluating a claimant's symptom testimony, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Ghanim*, 763 F.3d at 1163 (quoting *Lester*, 81 F.3d at 834; *Thomas*, 278 F.3d at 958). Here, the ALJ identified substantial specific evidence, discussed *supra*, and concluded that the evidence was inconsistent with Plaintiff's allegations of being bedridden for extended periods of time, minimal ability to stand, and needing to lie down frequently. Tr. 414. The ALJ reasonably interpreted the medical evidence.

### 2. Improvement with Conservative Treatment

The ALJ found Plaintiff's symptom testimony was inconsistent with evidence that her condition improved with conservative treatment. Tr. 410-14. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other

ORDER - 22

severe limitations). Furthermore, evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)); *see also Tommasetti*, 533 F.3d at 1039 (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

Here, the ALJ noted many instances where Plaintiff received conservative treatment and reported improvement. Tr. 410-14; *see* Tr. 337 (February 23, 2011: Plaintiff referred to physical therapy); Tr. 321-23 (March 28, 2011: Plaintiff met all physical therapy goals and reported no pain); Tr. 347 (October 11, 2011: Dr. Witherrite recommended home stretching and physical therapy); Tr. 332 (November 17, 2011: Plaintiff reported improvement with physical therapy and pain medication); Tr. 364 (December 24, 2011: Plaintiff reported improvement in back pain with medication); Tr. 370 (February 7, 2012: Plaintiff reported improved

pain with medication); Tr. 782 (June 21, 2013: Plaintiff recommended to start physical therapy); Tr. 726 (July 30, 2013: Plaintiff made modest gains in pain control and improved range of motion through physical therapy; Plaintiff discharged with home exercise program); Tr. 822-25 (April 27, 2015: Plaintiff reported improvement in carpal tunnel syndrome with wrist brace usage and was recommended to continue using wrist braces); Tr. 817 (June 5, 2015: Plaintiff recommended to use over the counter pain medication and wrist splints for carpal tunnel syndrome); Tr. 996 (January 24, 2017: Plaintiff recommended to continue ibuprofen, heat, and stretching); Tr. 1015 (April 21, 2017: Plaintiff reported her pain was controlled on Tylenol). The ALJ reasonably concluded that this evidence of improvement with conservative treatment was inconsistent with the severe pain symptoms Plaintiff alleged. Tr. 414.

Plaintiff challenges the ALJ's conclusion by identifying evidence of Plaintiff receiving epidural injections and reporting that her improvement with treatment did not last. ECF No. 15 at 18 (citing Tr. 333 (November 17, 2011: Plaintiff received epidural injection); Tr. 338 (September 7, 2011: Plaintiff "has failed physical therapy of the neck and low back")). It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable, as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's

decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan*, 528 F.3d at 1198 (internal quotation marks omitted). The ALJ reasonably interpreted the evidence as showing improvement in Plaintiff's condition with conservative treatment. This finding is supported by substantial evidence.

### 3. Daily Activities

The ALJ found Plaintiff's symptom testimony was inconsistent with her daily activities. Tr. 414-15. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair*, 885 F.2d at 603 (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally

debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

Additionally, the ability to care for others without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins*, 261 F.3d at 857. However, if the care activities are to serve as a basis for the ALJ to discredit the Plaintiff's symptom claims, the record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

Here, the ALJ found that Plaintiff's ability to care for her children, perform household tasks, and perform some seasonal work was inconsistent with the level of impairment Plaintiff alleged. Tr. 414-15. The ALJ noted that Plaintiff reported performing household activities including cooking, cleaning, and caring for her children. Tr. 414; *see* Tr. 206-13. The ALJ also observed that Plaintiff reported walking daily for exercise, Tr. 1001, and that her pain did not affect her functioning as a parent, Tr. 928.

The ALJ further found Plaintiff's ability to complete seasonal work at H&R Block during the relevant period was inconsistent with the level of impairment she alleged. Tr. 415. In some instances, short-term work may be considered an unsuccessful work attempt instead of substantial gainful activity. *See Gatliff v. Comm'r Soc. Sec. Admin.*, 172 F.3d 69, 694 (9th Cir. 1999). The concept was

designed as an equitable means of disregarding work that does not demonstrate sustained substantial gainful employment. *Id.*; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Plaintiff testified at the 2013 hearing that she worked at H&R Block between January 2013 and March 2013, that she worked 30 hours or less per week, and that she often missed work due to pain. Tr. 42-43. The limitations in Plaintiff's seasonal work do not provide clear and convincing reason to discredit Plaintiff's symptom testimony.

Even if the ALJ erred in evaluating Plaintiff's daily activities, such error is harmless. Error is harmless where the ALJ lists additional reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible). Here, as

discussed *supra*, the ALJ identified several other reasons, supported by substantial evidence, to find Plaintiff's symptom testimony not credible. The Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. Plaintiff is not entitled to relief on these grounds.

### C. Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of Troy Witherrite, M.D., and Roland Dougherty, Ph.D. ECF No. 15 at 8-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-

831).

### 1. Dr. Witherrite

Dr. Witherrite treated Plaintiff between February 2011 and November 2011.

Tr. 336-62. On August 15, 2012, Dr. Witherrite diagnosed Plaintiff with chronic

neck pain and opined that it was unknown whether work on a regular and

continuous basis would cause Plaintiff's condition to deteriorate and that Plaintiff's

impairment would cause her to miss four or more days of work per month. Tr.

380-81. On June 12, 2013, Dr. Witherrite diagnosed Plaintiff with neck pain and

low back pain and opined that work on a regular and continuous basis would not

cause Plaintiff's condition to deteriorate, that Plaintiff's impairment would cause

her to miss four or more days of work per month, that Plaintiff was capable of

performing sedentary work, and that Plaintiff could engage in frequent use of her

ORDER - 29

upper extremities. Tr. 709-11. The ALJ gave some weight to Dr. Witherrite's opinion that Plaintiff was limited to sedentary work with frequent postural limitations, but gave no weight to Dr. Witherrite's opinion that Plaintiff would miss four or more days of work per month. Tr. 415-16. Because Dr. Witherrite's opinion was contradicted[1] by Dr. Petruso, Tr. 74-76, and Dr. Ignacio, Tr. 93-95, the ALJ was required to provide specific and legitimate reasons to reject Dr. Witherrite's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Witherrite's opinion was inconsistent with the medical evidence. Tr. 415-16. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631. An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. §§

_____

[1] Plaintiff asserts Dr. Witherrite's opinion was uncontradicted because no other provider rendered an opinion as to how many days of work Plaintiff would miss per month due to her impairments. ECF No. 15 at 10. However, Dr. Petruso and Dr. Ignacio each opined Plaintiff was capable of performing light work, which contradicts the disabling level of missing days of work that Dr. Witherrite opined.

404.1527(c)(4) 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). As discussed *supra*, the ALJ noted that the medical evidence, including Dr. Witherrite's treatment notes, documented generally mild findings. *See* Tr. 336 (February 23, 2011: reports of tenderness, normal range of motion, normal strength and sensation in bilateral upper extremities); Tr. 340 (September 8, 2011: normal strength and sensation in extremities, negative straight leg raise); Tr. 344 (September 26, 2011: normal range of motion, muscle strength, and stability in all extremities with no pain on inspection; normal strength and sensation of bilateral upper extremities; normal range of motion of neck); Tr. 353 (November 1, 2011: musculoskeletal examination revealed normal range of motion, muscle strength, and stability in all extremities with no pain on inspection); Tr. 333 (November 18, 2011: tenderness to palpation over right sacroiliac joint, negative straight leg test and Patrick test bilaterally, some discomfort with full back extension, tenderness to palpation over the central and mid to lower cervical spine, minimal decreased range of motion in neck); Tr. 364 (December 24, 2011: musculoskeletal examination showed normal range of motion, normal strength, no tenderness, normal back alignment, and decreased range of motion in back); Tr. 369 (March 21, 2012: physical examination unremarkable, normal gait, normal toe- and heel-walking, Plaintiff could squat and raise without difficulty); Tr. 865 (August 5, 2012: back

ORDER - 31

examination included findings of normal inspection, normal range of motion, tenderness medial to the scapula on the left side trapezius area; upper extremities normal upon physical examination); Tr. 782 (June 21, 2013: tenderness at C4/C5, no tenderness at thoracic or lumbar spine, normal straight leg raise, normal gait); Tr. 731-34 (July 10, 2014: palpation tenderness over midline lumbar spine, no restriction in lumbar range of motion, negative straight leg tests, hip range of motion normal. Dr. Hurtarte did not recommend opioid therapy due to mild nature of Plaintiff's spine pathology); Tr. 744, 747 (July 18, 2014: decreased range of motion in neck, negative straight leg tests, normal inspection of neck and back, no neck or back tenderness, range of motion in neck and back within normal limits); Tr. 730 (August 7, 2014: gait non-antalgic and full range of motion in cervical, thoracic, and lumbar flexion, extension, and rotation); Tr. 831-32 (June 14, 2015: negative straight leg test, full muscle strength, normal muscle tone, sensation intact, normal gait, Plaintiff was able to walk on tiptoes, heels, and tandem walk without difficulties); Tr. 908 (July 28, 2015: soft tissue tenderness in the lower central lumbar area and normal range of motion); Tr. 952 (August 6, 2015: tenderness to palpation at L4-5, normal sensation, motor strength, balance, and gait); Tr. 996-97 (January 24, 2017: moving all extremities well, easily gets on and off exam table, pain on palpation over midline lumbar spine, Plaintiff able to bend forward and touch toes, pain on palpation midline cervical spine. Dr. Plotts found

ORDER - 32

no alarming symptoms by examination); Tr. 1004 (February 21, 2017: normal physical examination); Tr. 1015 (April 21, 2017: normal physical examination); Tr. 1018 (May 1, 2017: Plaintiff appeared well and in no distress, but declined further physical examination because "It's just going to hurt, I don't see why that's necessary"); Tr. 1021 (July 3, 2017: negative straight leg raise, full muscle strength in upper and lower extremities, full range of motion, symmetrical gait). The ALJ reasonably concluded that the relatively mild physical findings in the record were inconsistent with Dr. Witherrite's opinion that Plaintiff's pain would cause her to miss four or more days of work per month.

Plaintiff challenges the ALJ's conclusion by offering evidence that Plaintiff asserts supports Dr. Witherrite's opined limitation.[2] ECF No. 15 at 11; *see, e.g.,*

_____

[2] Plaintiff argues again that this Court is bound by its previous finding that the medical evidence was consistent with Plaintiff's symptom reporting and Dr. Witherrite's subsequent opinion. ECF No. 15 at 11; *see* Tr. 478. As discussed *supra*, the current record is substantially different than the record at the time of this Court's 2015 review, thus, the law of the case doctrine does not apply. *Stacy*, 825 F.3d at 567. This Court finds that the current record as a whole is less consistent with Plaintiff's symptom reporting and Dr. Witherrite's opined limitation than the previous record.

ORDER - 33

Tr. 328 (March 2011: reduced range of motion); Tr. 376 (December 2011: straight leg test positive); Tr. 785 (September 2014 MRI of cervical spine showed right posterior disc bulge at C5-6 level appeared to have slightly decreased in size, very mild spinal canal narrowing, slight interval increase in size of the broad-based disc bulge at C6-7 level touching upon the anterior surface of the cervical spinal cord, mild neuroforaminal narrowing on the left and right which have not significantly changed since 2011 MRI, and no abnormal signal intensity within the cervical spinal cord); Tr. 884 (April 2015 mild positive electrodiagnostic test); Tr. 981 (December 2016: muscle spasm observed). It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable, as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan*, 528 F.3d at 1198 (internal quotation marks omitted). The ALJ reasonably concluded that the evidence as a whole was inconsistent with Dr. Witherrite's opined limitation, and this finding is supported by substantial evidence.

Second, the ALJ found Dr. Witherrite's opinion was based on Plaintiff's self-reports. Tr. 416. A physician's opinion may be rejected if it based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v.*

*Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604. "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, [this] is no evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d at 1162. Here, the ALJ noted that Dr. Witherrite's 2013 opinion that Plaintiff would miss four or more days of work per month was "based on [her] prior experience with working." Tr. 416; *see* Tr. 710. Plaintiff's prior experience with working was information that Plaintiff reported to Dr. Witherrite. Because the ALJ provided clear and convincing reasons to discredit Plaintiff's subjective symptom reporting, discussed *supra*, the ALJ reasonably discredited Dr. Witherrite's limitation for being based on Plaintiff's self-reporting.

Third, the ALJ found Dr. Witherrite's opinion was not sufficiently explained or supported. Tr. 416. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Also, individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions. *Crane*, 76 F.3d at 253. However, if treatment notes are consistent with the opinion, a check-box form may not automatically be rejected. *See Garrison*, 759 F.3d at 1014 n.17;

*see also Trevizo*, 871 F.3d at 667 n.4 ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form"). Here, the ALJ concluded that Dr. Witherrite's opined limitation was not sufficiently explained because Dr. Witherrite's opinion does not explain the basis for the opined limitation and because the medical evidence, including Dr. Witherrite's own treatment notes, did not document pain reports or symptom exacerbation to support a finding that Plaintiff would miss four or more days of work per month. Tr. 416. This was a specific and legitimate reason to discredit Dr. Witherrite's opinion.

Finally, the ALJ noted that Dr. Witherrite did not treat Plaintiff for some time before rendering his opinions. Tr. 416. The number of visits a claimant had with a particular provider is a relevant factor in assigning weight to an opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Additionally, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See id*. The record reflects treatment notes from Dr. Witherrite from between February 2011 and November 2011, Tr. 336-62, and once again in July 2015 when Plaintiff presented to reestablish care and Dr. Witherrite declined to accept her as a patient. Tr. 849-51. Although the record does not reflect that Plaintiff continued to see Dr. Witherrite before he rendered his opinions in August 2012 and June 2013, Dr. Witherrite is a treating provider, and the record reflects that Dr. Witherrite was

provided with treatment notes from Plaintiff's other providers. *See* Tr. 368-77, 872-74. Accordingly, this was not a specific and legitimate reason to discredit Dr. Witherrite's opinion. However, because the ALJ provided other specific and legitimate reasons to reject Dr. Witherrite's opinion that are supported by substantial evidence, this error is harmless. *See Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination"). Plaintiff is not entitled to relief on these grounds.

### 2. *Dr. Dougherty*

Dr. Dougherty examined Plaintiff on May 22, 2014 and assessed a series of personality traits and features. Tr. 922-36. Dr. Dougherty diagnosed Plaintiff with "rule out Cognitive disorder, NOS." Tr. 934. The ALJ noted the presence of Dr. Dougherty's report in the record and concluded that "these are not diagnoses and do not constitute medically determinable impairments." Tr. 408.

Plaintiff asserts the ALJ should have given weight to Dr. Dougherty's findings that Plaintiff had a tendency to reject authority, that she may have conflicts over rules, that she would likely have disturbed interpersonal relationships and would especially have difficulty with men, that she may develop physical symptoms when under stress, that she may have difficulty engaging effectively in counseling, and that her memory issues would require adjustments

ORDER - 37

for her to retain information.  ECF No. 15 at 15, *see* Tr. 931, 935-36.  However,

Dr. Dougherty's observations are not medical opinions on functional limitations.

"Medical opinions are statements from acceptable medical sources that

reflect judgments about the nature and severity of your impairment(s), including

your symptoms, diagnosis and prognosis, what you can still do despite

impairment(s), and your physical or mental restrictions."  20 C.F.R. §§

404.1527(a), 416.927(a).  The Ninth Circuit has found no error in ALJ decisions

that do not weigh statements within medical records when those records do not

reflect physical or mental limitations or otherwise provide information about the

ability to work.  *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th

Cir. 2010) (recognizing that when a physician's report did not assign any specific

limitations or opinions regarding the claimant's ability to work, "the ALJ did not

need to provide 'clear and convincing reasons' for rejecting [the] report because

the ALJ did not reject any of [the report's] conclusions.").  Dr. Dougherty's report

is a psychological evaluation that documented personality profile observations, did

not diagnose any severe impairments, and did not opine any limitations regarding

Plaintiff's specific functioning.  The ALJ did not err in failing to credit Dr.

Dougherty's report because the report contained no opinions to credit.

# CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 21, is **GRANTED**.

3. The Court enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED January 14, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 39